UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA R BOWMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00206-SEB-DML |
| ) | |
| CAROLYN W. COLVIN, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

Report and Recommendation
on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Melissa R. Bowman is not disabled.

**Introduction**

Ms. Bowman applied on April 17, 2012, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, alleging that she has been disabled since November 1, 2011. Acting for the Commissioner of the Social Security Administration following a hearing on March 12, 2014, an administrative law judge ("ALJ") found that Ms. Bowman is not disabled. The Appeals Council denied review of the ALJ's decision on December 1, 2015, rendering the ALJ's decision for the

Commissioner final. Ms. Bowman timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Bowman contends that the ALJ erred by failing to explain his finding that Listing 1.04 (disorders of the spine) was not met and by failing to obtain medical opinion evidence as to medical equivalence. In addition, Ms. Bowman argues that the ALJ erred by ignoring an entire line of evidence supporting disability, in violation of SSR 06-03p.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Bowman's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Ms. Bowman is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has

implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.[1]

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence

in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Administrative Proceedings

Ms. Bowman was born in 1967 and was 43 years old at the alleged onset of her disability in November 2011.

At step one, the ALJ determined that Ms. Bowman had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found Ms. Bowman had the following severe impairments: (1) lumbar degenerative disc disease, status post-surgery and (2) asthma. At step three, the ALJ concluded that Ms. Bowman did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

The ALJ determined Ms. Bowman has the RFC to perform sedentary work, as defined in the regulations, except she can stand and/or walk for up to a total of four hours in an eight hour work day and she can sit for up to a total of four hours in an eight hour work day. Ms. Bowman can occasionally climb ramps and stairs and can balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can work in situations up to but excluding concentrated exposure to respiratory irritants (e.g., fumes, noxious odors, dusts, mists, gases, and poor ventilation). She can have frequent exposure to extreme heat and extreme cold. She can perform productive work tasks for up to an average of 95-100% of an

eight hour work day, not including typical morning, lunch, and afternoon breaks. (R. 23).

At step four, the ALJ concluded Ms. Bowman was unable to perform any past relevant work. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Ms. Bowman could perform and therefore, she was not disabled.

## Analysis

**I.    Substantial evidence supports the ALJ's step three decision.**

Ms. Bowman argues that the ALJ erred at step three by deciding that Ms. Bowman's impairments did not meet or medically equal Listing 1.04 (Disorders of the Spine). Ms. Bowman asserts that the ALJ "erroneously made a blanket statement that listing 1.04 is not met without any discussion of the evidence as it relates to the requirements of the listing criteria." According to Ms. Bowman, the ALJ's step three analysis was no analysis at all; rather, the ALJ simply listed three of the requirements of Listing 1.04 and concluded that the record did not establish that Ms. Bowman met or equaled those requirements. She also argues that the ALJ should have sought the opinion of a medical expert as to whether her impairments met or equaled a listing. Although it is far from clear in her brief, it appears the crux of Ms. Bowman's argument is that whenever there is additional medical evidence post-dating the Disability Determination Forms, the ALJ is required to

have a medical expert testify at the hearing on the issue of medical equivalence.[2] The court will address each of these arguments in turn.

### A. <u>The ALJ properly addressed and analyzed Listing 1.04.</u>

The ALJ specifically considered Ms. Bowman's degenerative disc disease under Listing 1.04. (R. 23). Significantly, in his step three analysis, the ALJ did not say simply there was no evidence in the record that established that Ms. Bowman met or equaled Listing 1.04, as Ms. Bowman asserts. While the ALJ determined that Listing 1.04 was not met because there was no evidence in the record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, the ALJ also specifically found that "there is *no opinion* in the medical evidence that any listing is met or medically equaled." (*Id.* at 22-23). *Cf. Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (discussed below).

While Ms. Bowman's brief includes a lengthy discussion of medical evidence regarding her back impairment, she does not point to any medical opinion that Listing 1.04, or any other listing, was met or medically equaled. In fact, the only medical opinion evidence in the record on this issue is that Ms. Bowman does *not* meet or medically equal a listing. While Dr. Felker opined in February 2014 in a single paragraph that Ms. Bowman's combination of impairments renders her totally disabled and completed a "check the box" style Physical RFC assessment, he did not opine that Ms. Bowman met or equaled a listing. (R. 630-33). The ALJ

---

[2] In fact, much of Ms. Bowman's argument on this point could be read as asserting that an ALJ is always required to have a medical expert testify at the hearing. (*See* Br. at 13, 15, 18, 20.) That, of course, is not the law.

specifically addressed the opinions offered by Dr. Felker, and Ms. Bowman does not challenge the ALJ's treatment of Dr. Felker's opinions. Furthermore, the ALJ discussed Ms. Bowman's medical records regarding her back impairment in great detail. While not in the step three portion of the opinion, this discussion establishes that the ALJ specifically considered the relevant medical evidence. (*Id.* at 24-25).

Ms. Bowman argues that this case is just like that presented in *Minnick*, where the ALJ's consideration of the listing consisted of two sentences and no analysis whatsoever supported the ALJ's conclusion. 775 F.3d at 935-36. The ALJ's step three analysis in *Minnick* was as follows: "'The claimant's degenerative disc disease was evaluated under Listing 1.04 (disorders of the spine). *The evidence does not establish* the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing.'" *Id.* at 935 (emphasis added). The Seventh Circuit specifically discussed a "particular example" of the inadequacy of this analysis by pointing to the fact that the ALJ "failed to acknowledge several aspects of the record that could in fact meet or equal Listing 1.04." *Id.* at 936. The court could not tell whether the ALJ had considered and dismissed, or instead completely failed to consider, relevant medical evidence in the record. *Id.* Furthermore, the ALJ never sought an expert opinion as to whether the evidence supported a finding of equivalency. *Id.* That is not the case here.

The ALJ specifically considered and rejected Listing 1.04, and he explained his reasons for doing so. Those reasons are supported by substantial evidence. The court may not reweigh the evidence, and Ms. Bowman cannot point to any line of

8

evidence that the ALJ failed to consider that decidedly detracts from his findings. There is no error.

### B. The ALJ did not err by failing to summon a medical expert to testify at the hearing.

The ALJ bears responsibility for deciding medical equivalence for cases at the hearing level. 20 C.F.R. § 404.1526(e). While "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight" (SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)), Disability Determination and Transmittal Forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (internal citations omitted); *see also* SSR 96-6p, 1996 WL 374180, at *3. "Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." SSR 96-6p, 1996 WL 374180, at *3.

Contrary to Ms. Bowman's assertion, the ALJ is required to receive an updated medical opinion from a medical expert only "[w]hen additional evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the

9

impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4 (emphasis added). *See also Buckhanon v. Astrue*, 368 F. Appx. 674, 679 (7th Cir. 2010).

Here, four Disability Determination and Transmittal (DDT) Forms (two for Title II and two for Title XVI) stated that Ms. Bowman was not disabled.[3] *Cf. Wadsworth v. Astrue*, No. 1:07-cv-0832, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) ("Here, no medical advisor designated by the Commissioner has expressed an opinion as to whether [the claimant's] impairments equaled a listing.") The initial DDT forms for Title II and Title XVI are dated July 9, 2012. The reconsideration DDT forms are dated October 18, 2012. (R. 86-89). The ALJ gave significant weight to the state disability determination medical professionals. (*Id.* at 27.) Ms. Bowman does not challenge the ALJ's treatment of the opinions of the state agency consultants.

While Ms. Bowman cites an abundance of medical evidence in her brief regarding her back impairment (much of which does *not* post-date the determination by the state agency consultants), she fails to identify what medical records post-date the DDT forms and, more importantly, how those medical records

---

[3] The two SSI transmittal forms contain a code of "N32" in Item 22. This code is to reflect the "nature of the allowance or denial at the time of adjudication." POMS DI 26510.045, *available at:* https://secure.ssa.gov/poms.nsf/lnx/0426510045 (last visited Oct. 14, 2016). The code of "N32" means that the basis for the decision is that the applicant has the capacity for significant gainful activity other than relevant past work or has the capacity for significant gainful activity but does not have a work history. *See id.* The DIB transmittal forms contain a code of J1 in Item 22. This code means that the basis for the decision is that the applicant has the capacity for significant gainful activity other than relevant past work. *See id.*

change the analysis regarding whether Ms. Bowman met or medically equaled a listing.

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Although the ALJ "bear[s] some responsibility for developing the administrative record . . . [the ALJ is] also free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . ." *Buckhanon*, 368 F. Appx. at 679 (internal citations omitted). Ms. Bowman knew in 2012 that the state-agency consultants did not think she was disabled. Ms. Bowman, represented by counsel, never presented an opinion on medical equivalence, nor did she ask the ALJ to recontact the state agency consultants. At the same time, however, Ms. Bowman was gathering other evidence for the record. In these circumstances, the appropriate inference is that Ms. Bowman decided another expert opinion would not help her. *Id.* (court could not conclude ALJ erred or "any putative error was harmful;" ALJ expressly relied on medical judgment of state agency consultants and claimant's medical providers remained silent on question of medical equivalence).

Under these circumstances, the ALJ did not err by failing to summon a medical expert to testify at the hearing.

## II. The ALJ did not err by failing to discuss the evidence that Ms. Bowman received Medicaid benefits.

Ms. Bowman argues the ALJ erred because he "completely ignored" evidence in the record that Ms. Bowman receives Indiana Medicaid benefits. Ms. Bowman asserts that because she receives Medicaid assistance, she "thus has been declared

11

disabled by the medical review panel of the State of Indiana." (Br. at 22). Ms. Bowman purports to set forth a standard for Medicaid eligibility under Indiana law.[4] She also maintains that Indiana's definition of disability has been considered more restrictive than the definition under the SSI program.[5] (*Id.*)

People receive Medicaid benefits for a number of reasons, not just on the basis of disability. It is important to note that Ind. Code 12-15-2-3, to which Ms. Bowman directs the court, reads as follows:

> An individual who:
>
> (1) is receiving monthly assistance payments or medical services; *or*
>
> (2) would be eligible to receive medical services under the aid to dependent children assistance category or under the state supplemental assistance program for the aged, blind, or disabled;
>
> is eligible to receive Medicaid.

---

[4] Ms. Bowman claims, "According to Indiana law, if a person can show that his or her disability is likely to impair their ability to provide for themselves over the next twelve month period, they will be eligible for Medicaid." (Br. at 20). She cites to Ind. Code 12-15-2 in support, but this is simply the citation to the entire chapter on Medicaid eligibility.

[5] Ms. Bowman cites Ind. Code 12-15-2-3 and *Humphreys v. Day*, 735 N.E. 2d 837 (Ind. Ct. App. 2000) to support this statement. However, Ind. Code 12-15-2-3 simply sets forth certain eligibility criteria (and does not define the term disabled). And in *Humphreys*, the Indiana Court of Appeals held that the Indiana Family and Social Services Administration violated 42 U.S.C. § 1396a(f) (State plans for medical assistance; Effective date of State plan as determinative of duty of State to provide medical assistance to aged, blind, or disabled individuals) by applying a more restrictive Medicaid eligibility requirement than was imposed in January 1972.

(emphasis added). Therefore, even the authority to which Ms. Bowman cites shows there are multiple grounds upon which a person may qualify for Medicaid in Indiana. Indeed, "Medicaid eligibility is determined by several factors and can be complicated. There are many categories of eligibility and several different Medicaid programs." http://member.indianamedicaid.com/am-i-eligible.aspx (last visited Oct. 13, 2016). Contrary to Ms. Bowman's assertion, then, the fact that Ms. Bowman qualified for Medicaid does not necessarily mean Ms. Bowman "has been declared disabled by the medical review panel of the State of Indiana."

The ALJ is only required to consider evidence of a *disability* decision by another agency. SSR 06-03p. 2006 WL 2329939 (Aug. 9, 2006), at *6 ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."). The problem with Ms. Bowman's argument is that there is no evidence of a *disability* decision by another agency. Her brief cites the following evidence regarding Medicaid: (1) a single reference to Medicaid having covered certain medical services made by Ms. Bowman during her testimony at the hearing; (2) an unsigned handwritten letter, presumably by Ms. Bowman, stating she has received Medicaid; and (3) notations in a medical record that she was planning to follow up with an appeal to Medicaid and that she was getting evaluated for Medicaid (Br. at 22; R. 61, 245, 555-56). However, Ms. Bowman has failed to present any evidence that she was found disabled for purposes of Indiana Medicaid benefits. If Ms. Bowman was in fact declared disabled by the state of Indiana, then the court is left to wonder why that evidence was not presented to the

ALJ. *See Buckhanon*, 368 F. Appx. at 679 ([The ALJ is]. . . free to assume that a claimant represented by counsel has presented her strongest case for benefits . . . .").

The two Southern District of Indiana cases to which Ms. Bowman cites are not dispositive here. In both cases, the ALJ had made a number of errors necessitating remand; the court did not remand on Medicaid grounds alone. *See Lynch v. Astrue*, No. 1:11-cv-861, 2012 WL 3683529 (S.D. Ind. Aug. 24, 2012); *East v. Astrue*, No. 1:09-cv-137, 2010 WL 670551 (S.D. Ind. Feb. 19, 2010). In this case, the court has already determined that there was no error with the ALJ's step three decision, the only other basis for reversal and remand asserted by Ms. Bowman. Moreover, in *East*, the claimant testified on multiple occasions that he received Medicaid *as a result of his disability*. *See* 2010 WL 670551 at \*1. And in *Lynch*, Judge Lawrence apparently was persuaded that disability was the basis for the claimant's Medicaid eligibility. *See* 2010 WL 670551 at \*9. That is not the case here.

Ms. Bowman has not submitted any evidence as to the basis for her Medicaid eligibility. The ALJ did not err in failing to address a disability determination under Indiana's Medicaid program when she has failed to identify any evidence in the record that such a determination was ever made.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Ms. Bowman is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: October 26, 2016

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system